UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RAYMOND H. RYAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No: SA-07-CA-723-XR |
| | § | SA-07-CA-744-XR |
| RICHARD P. WHITEHURST, *et al.* | § | SA-07-CA-762-XR |
| | § | SA-07-CA-824-XR |
| Defendants. | § | SA-07-CA-855-XR |

**ORDER**

The Governmental Defendants filed a motion to dismiss for failure to establish personal jurisdiction and assert a claim for which relief can be granted (Docket No. 36). Plaintiff filed a response, the Government filed a reply, Plaintiff followed up with a sur-response, and the Government closed with a sur-reply. After considering the briefing and pertinent case law, the Court GRANTS in part and DENIES in part the Government's motion to dismiss.

**Factual Background**

The factual background underlying this case is lengthy and convoluted. Rather that attempt a recitation of all that has been alleged, the Court will stick to those facts most pertinent to the motion before it.

Plaintiff Raymond Ryan worked for the Department of the Air Force in San Antonio, Texas from 1988 until his termination from employment in March 2006. Ryan had been an aerospace

engineer with the T56 aircraft engine program at Kelly Air Force Base (AFB) in San Antonio when that base was selected for closure in 1995. After Kelly AFB closed, the T56 engine work was transferred to contractors operating out of Tinker AFB in Oklahoma. Rather than be reassigned to Tinker AFB at this time, Ryan chose to remain employed as the Government's on-sight engineer for the T56 workload in San Antonio, although his supervisors were all located at Tinker.

In 2000-01, Ryan reported to his superiors defective equipment made by a contractor. Ryan also reported to the Air Force Office of Special Investigations alleged customs violations by a contractor. This contractor filed a complaint in July 2001 concerning Ryan's handling of the matter.

As time progressed, the relationship between Ryan and his superiors deteriorated. The Air Force apparently began receiving increased complaints about Ryan's demeanor and treatment of others in the workplace. In 2003, Ryan received a reprimand, followed by a performance rating which he considered unjustifiably low.

After receiving another complaint against Ryan in 2005, his supervisors decided that he could no longer continue working in San Antonio without supervision, and they ordered him to report for work at Tinker AFB in Oklahoma.

Around this time, however, Ryan informed his superiors that he was suffering from back problems, producing notes from two physical therapists. Eventually, he submitted a letter from a physician stating that his ability to travel was restricted by herniated disks and that it was inadvisable for him to sit in a vehicle for longer than thirty minutes at a time. Ryan also submitted documentation suggesting he suffered from further restrictions to his physical capacities, including limitations on his ability to lift, climb, twist, and pull.

During this same time period, however, coworkers allegedly witnessed Ryan lifting heavy

boxes into his pickup truck. Concerned about the inconsistencies between what Ryan was telling them and what his coworkers were purportedly observing, Ryan's third-level supervisors, Colonel Henry Gaudreau and Deputy Director Thomas Laird, sought advice from the Employee Relations staff and the Judge Advocates General attorneys about how to proceed. As a result of these consultations, Gaudreau and Laird approved the hiring of Kelmar & Associates, a private investigation firm, to perform video surveillance of Ryan outside his home in St. Hedwig, Texas. The surveillance was conducted on December 26, 2005.

Ryan was ultimately terminated from his position on March 21, 2006 for absenteeism and for failure to report to his new position at Tinker AFB. After a partially successful appeal to the Merit Systems Promotion Board, he was reinstated on October 14, 2007. As of the time the Government's motion to dismiss was filed, Ryan had not yet reported for work at Tinker.

## Analysis

Standard for Motion to Dismiss

In determining the merits of a 12(b)(6) motion to dismiss, the Court must accept "all well-pleaded facts as true and . . . view them in the light most favorable to the plaintiff."[1] Moreover, the Court "may not look beyond the pleadings" in ruling on the motion.[2] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face."[3] In other words, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if

---

[1] McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992).

[2] Id.

[3] In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).

doubtful in fact)."[4]

Personal Jurisdiction - Overview

As an initial matter, "when a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[5] In so doing, the court must resolve relevant factual disputes in the plaintiff's favor, and the plaintiff "need only plead a prima facie case for personal jurisdiction."[6]

In Texas the state long-arm statute provides a court with "personal jurisdiction over a foreign defendant to the fullest extent allowed by the federal constitution."[7] Accordingly, "the usual two-step analysis reduces to one step, and we consider whether exercising jurisdiction over [the Defendants] is consistent with the Due Process Clause of the Fourteenth Amendment."[8]

As the Fifth Circuit has said, "the Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when 1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and 2) the exercise of jurisdiction over that defendant does

---

[4] Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1965 (2007).

[5] Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997).

[6] Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 424 (5th Cir. 2005).

[7] Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 214 (5th Cir. 2000).

[8] *Id*.

not offend 'traditional notions of fair play and substantial justice.'"[9] The court went on to state that "minimum contacts . . . can be established through contacts that give rise to specific personal jurisdiction or those that give rise to general personal jurisdiction."[10]

General personal jurisdiction will "attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'"[11] As the holding in the Supreme Court case of *Helicopteros Nacionales de Colombia, S.A. v. Hall*[12] and its lower court progeny demonstrate, to qualify for general jurisdiction, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there."[13] None of the Governmental Defendants' contacts with Texas rises to such a level, meaning that if there is personal jurisdiction, it must be specific personal jurisdiction.

In "deciding whether [specific] personal jurisdiction is consistent with the Due Process Clause," the Court considers "1) whether the defendant has minimum contacts with the forum state . . . [and] 2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[14] If a plaintiff makes a prima facie showing of facts that meets these two requirements, then the "burden of proof shifts to the defendant to show that the assertion of

---

[9] Mink v. AAAA Development LLC, 190 F.3d 333, 336 (5th Cir. 1999).

[10] *Id*.

[11] *Alpine View*, 205 F.3d at 215.

[12] 466 US 408 (1984).

[13] 4 Fed. Prac. & Proc. Civ.3d § 1067.5.

[14] Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002).

jurisdiction is unfair and unreasonable."[15]

Minimum Contacts - Overview

"A defendant establishes minimum contacts with a state if the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there."[16] The defendant must engage in some act whereby it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws . . . Even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact."[17]

Minimum Contacts Overview - Individual Governmental Defendants

During all times relevant to this case, Defendants Whitehurst, Laird, Gaudreau, Kaestner, Horn, and McIntosh were Government employees residing in Oklahoma.

Plaintiff's claims against these Defendants are numerous, but generally relate to the decisions to confer an unacceptable rating on his work performance, to arrange for surveillance to be conducted of him outside his house, and to terminate him from employment. Plaintiff's claims against the Governmental Defendants are in their individual capacities.

Because Plaintiff sues these Defendants in their individual capacities, he must show how each Defendant purposefully availed himself of the privilege of conducting activities in Texas such

---

[15] *Id*. at 378, 382.

[16] *Id*. at 379.

[17] *Id*.

that he "should reasonably anticipate being haled into court there."[18]

To meet this burden, Plaintiff must show how each Governmental Defendant had contacts with Texas - **beyond those contacts established through the performance of his official duties** - to warrant this Court's exercise of personal jurisdiction over him. As the Fifth Circuit has said, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual."[19]

This distinction between contacts made in an official or corporate capacity versus in an individual capacity has been supported by a number of other courts. The Eighth Circuit has observed that "the law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity."[20] Furthermore, the Ninth Circuit has held that "a corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum."[21]

---

[18] *Id.*

[19] Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985).

[20] Arkansas Rice Growers Cooperative Association v. Alchemy Industries, Inc., 797 F.2d 565, 574 (8th Cir. 1986).

[21] Forsythe v. Overmyer, 576 F.2d 779, 783-4 (9th Cir. 1978). *See also* 569 F.Supp. 160, 168 (S.D. Tex 1983) "In order to assert [personal] jurisdiction over [a defendant], it is necessary to show that he took 'purposeful and affirmative' action on his own behalf and not as a corporate officer."

Minimum Contacts - Whitehurst

Starting with Defendant Whitehurst, Plaintiff alleges that Whitehurst met with him in San Antonio in November 2001 to discuss a complaint alleged against the Plaintiff by a contractor. Plaintiff further states that Whitehurst called him in San Antonio on April 17, 2003 and gave him an "unacceptable appraisal rating."[22] More broadly, Plaintiff asserts that "in some instances," Whitehurst "was present in person in San Antonio and in other instances the action took place over a phone call that was initiated by the defendant, Richard Whitehurst."[23]

All of these contacts with Texas concern Whitehurst's performance of duties on behalf of his government employer. Because none of these contacts establish a connection between Whitehurst and Texas that would suggest Whitehurst purposefully availed himself of the privileges of conducting activity in Texas for his own benefit, this Court has no personal jurisdiction over Whitehurst to entertain Plaintiff's claims against him in his individual capacity.

Minimum Contacts - Laird and Gaudreau

As for the Texas contacts of Defendants Laird and Gaudreau, Plaintiff avers that they contacted Kelmar & Associates (Kelmar), a Texas corporation, to arrange for video surveillance of Plaintiff at his Texas residence. Plaintiff also contends that Laird and Gaudreau disclosed private personnel records to Kelmar.

In his response to Defendants' motion to dismiss, Plaintiff attempts to construct an argument for how Laird's and Gaudreau's actions were not taken on behalf of their government employer. Plaintiff tries to show that no federal basis existed to justify the video surveillance and that

---

[22] Docket No. 42 at 2.

[23] *Id*. at 2-3.

Defendants have failed to submit proof that a higher authority approved the surveillance.

Even assuming Plaintiff is correct, an issue the Court does not decide, Plaintiff has failed to convincingly explain how Laird and Gaudreau were acting for their personal benefit rather than for the benefit of their employer. Plaintiff's argument that because Laird's and Gaudreau's actions "had not been officially sanctioned by higher management, . . . the investigator was [therefore] acting as a personal agent for these defendants" is baseless.[24]

According to the sworn declaration of Gaudreau, who at the time in question was the Commander of the 748th Combat Sustainment Group:

> It came to my attention that Mr. Ryan was claiming he had a back injury which prevented him from working and from moving to Oklahoma when his duty location was moved from San Antonio, Texas to Tinker Air Force Base. It also came to my attention that several employees reported that Mr. Ryan had been seen lifting and carrying several boxes from his office, and that his physical activity was inconsistent with his report of a serious back injury. My deputy director, Tom Laird, and I were provided copies of pictures of Mr. Ryan's lifting boxes and moving activities which had been taken by a coworker by use of a cell phone camera. Mr. Laird and I met with personnel from the Employee Relations branch and lawyers from the JAG (Judge Advocates General) branch to discuss what legal options we had to address these inconsistent reports about Mr. Ryan's back condition. Mr. Laird and I were told that investigators from the Office of Special Investigations (OSI) were unavailable due to deployments but that we could contract out the surveillance activity. We were told we could legally hire a private investigator to take video of Mr. Ryan on his property in Texas to determine if his back allowed him to do strenuous physical activity. Ultimately, Mr. Laird and I agreed and approved the hiring of Kelmar & Associates in San Antonio, Texas to conduct the videotaping.[25]

Plaintiff's assertions to the contrary, it is clear that the actions of Gaudreau and Laird that gave rise to their contacts with Texas were not taken for their personal benefit, but were taken in furtherance of their duties as employees of the Government. Therefore, Plaintiff has failed to

---

[24] *Id*. at 8.

[25] Docket No. 37, Exhibit 4 at ¶ 4.

establish that personal jurisdiction should exist over these Defendants.

<u>Minimum Contacts - Kaestner</u>

Turning to Defendant Kaestner, Plaintiff alleges he "failed to authorize or deny the plaintiff's leave request" in accordance with Air Force regulations, improperly disclosed information contained in Plaintiff's personnel record, allowed a "third party to listen in on a telephone conversation with the plaintiff without the plaintiff's knowledge," "authorized a charge of $2500 to a government impact card for the expressed purpose of reimbursing a private investigator," and "arbitrarily placed the plaintiff on annual leave status without concurrence of the plaintiff."[26]

The Court agrees with the Government that the allegations asserted against Kaestner "are limited to . . . supervisory functions and decisions [he] performed in Oklahoma."[27] To the extent Kaestner's actions relate to Texas, that relationship is limited to their effect being felt by Plaintiff in Texas. "The effects test," however, "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state."[28]  Rather, the effects of an action "are to be assessed as part of the analysis of the defendant's relevant contacts with the forum. Whether these effects, either alone or in combination with other contacts, are sufficient to support in personam jurisdiction will turn upon the particular facts of each case."[29]

In this case, the combination of effects and contacts fail to reach the requisite threshold to establish that Kaestner purposefully availed him of the benefit of conducting activities within Texas.

---

[26] Docket No. 11 at 6-7.

[27] Docket No. 36 at 13.

[28] *Allred*, 117 F.3d at 286.

[29] *Id*. at 287.

Like with the Defendants discussed above, there is no evidence that Kaestner's actions were undertaken for personal benefit. Rather, the facts and circumstances of this case make evident that Kaestner's actions were taken as a governmental employee in attempted furtherance of his employment responsibilities.

Therefore, no personal jurisdiction extends over Kaestner.

Minimum Contacts - Horn

As for Defendant Horn, Plaintiff alleges numerous accusations, including that Horn upheld a reprimand and an unacceptable job rating, rejected an informal grievance that Plaintiff's first level supervisor had failed to conduct a midterm job review of Plaintiff, violated a whistle-blower law, "falsified government documents in order to support a suspension of the plaintiff," failed to accommodate Plaintiff's alleged disability, terminated Plaintiff unjustly, and "intentionally gave false testimony under oath to a Federal Judge in a Merit System Protection Board case."[30]

Plaintiff's allegations suffer from the same defects observed with respect to Defendant Kaestner. The only contacts with Texas that Plaintiff can show Horn had is through decisions made by Horn in Oklahoma that purportedly had an effect on Plaintiff in Texas. These watered-down contacts additionally suffer from being made by Horn in furtherance of the interests of his employer, not his own interests. Because Plaintiff cannot show that Horn engaged in any contacts with Texas to purposefully benefit himself, the Court cannot exercise personal jurisdiction over him.

Minimum Contacts - McIntosh

Finally, as to Defendant McIntosh, Plaintiff merely alleges that McIntosh ordered him to report to duty in Oklahoma before he was reinstated to active employment status and that McIntosh

---

[30] Docket No. 11 at 7-8.

informed Plaintiff he would be listed as Absent Without Leave (AWOL) until he reported to duty.

There is no indication that Defendant McIntosh had any other contacts with Texas. Because such limited contact, which resulted from McIntosh's discharge of his employment responsibilities and was not intended to advance any personal interests, fails to meet the minimum contacts standard, this Court does not have personal jurisdiction over the Defendant.

<u>Tinker Air Force Base</u>

The only allegation of wrongdoing asserted against Tinker AFB in Plaintiff's Amended Complaint reads as follows: "the agency, Tinker Air Force Base, failed to exercise proper control over the defendant [Horn] and should also be held responsible for the actions of Mr. Horn."[31] Such a conclusory allegation fails to identify how Tinker failed to exercise control over one of its employees or under what statute or legal theory Plaintiff asserts his right to relief.

Because Plaintiff's allegation against Tinker AFB is a conclusory one that fails to state a cognizable claim, Tinker AFB is dismissed as a party from this case.

## Conclusion

Because the Court does not have personal jurisdiction over the individual Governmental Defendants, they are dismissed without prejudice. Further, because Plaintiff has failed to state a

---

[31] *Id*. at 7. In his response to the Government's motion to dismiss, Plaintiff elaborates by stating that "when the government officials at Tinker AFB made the decision to shield it's [sic] employees who blatantly violated Air Force regulations and federal law, then the plaintiff was left with no option but to sue that agency (Tinker AFB) for damages also." Docket No. 42 at 10. In fact, Plaintiff seeks $2 million in damages from Tinker Air Force Base. *See* Docket No. 11 at 10.

Plaintiff cannot, however, assert new causes of action in a response to a motion to dismiss. Rather, the only live claims that he has are those which he asserted in his Amended Complaint (Docket No. 11). Even if he could add new claims now, the explanation given above fails to state a recognizable claim.

cognizable claim against Tinker AFB, it is dismissed without prejudice. Lacking jurisdiction over these parties, the Court has no grounds on which to consider the substantive merits of the Government's alternative grounds for dismissal. Accordingly, the Government's motion to dismiss (Docket No. 36) is GRANTED in part and DENIED in part.[32]

It is so ORDERED.

SIGNED this 1st day of May, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[32] The Court notes that Plaintiff's claims against Defendant Kelmar & Associates remain active. Kelmar filed its own motion to dismiss (Docket No. 65), which will be addressed in a separate order.